# EXHIBIT A

## COMMONWEALTH OF MASSACHUSETTS

**SUFFOLK, ss.**                                    **SUPERIOR COURT**
                                                    **C.A. NO.:**

**LIGHTHOUSE PRODUCTIONS, INC.**
**d/b/a PORT LIGHTING SYSTEMS,**
      **Plaintiff,**

                                                    **E-FILE 12/2/2020**

**v.**

**FIRST MERCURY INSURANCE COMPANY,**
      **Defendant.**

### PLAINTIFF'S COMPLAINT

1.      Plaintiff is Lighthouse Productions, Inc. d/b/a/ Port Lighting Systems ("Lighthouse") is a New Hampshire corporation with a usual place of business at 24 London Lane, Seabrook, New Hampshire.

2.      Defendant First Mercury Insurance Company ("First Mercury") is an insurance Company with a usual place of business at One South Wacker Drive, Suite 2380, Chicago, Illinois.

3.      First Mercury issued a commercial general liability policy to Bill Kenney Productions, Inc. ("Bill Kenney"), Policy Number MA-CGL– 0000054042 – 05.

4.      Lighthouse and Bill Kenney are parties to a "subcontractor agreement."

5.      Pursuant to that "subcontractor agreement," Bill Kenny was contractually obligated to designate Lighthouse and its customer and each of their directors, officers, and employees as additional insureds on a primary and noncontributory basis.

6.      A true copy of the subcontract is attached hereto **Exhibit 1**.

7.      On December 28, 2019, Bill Kenny was performing work, pursuant to the subcontract attached hereto as **Exhibit 1** with Lighthouse.

8.      Specifically, Bill Kenny provided laborers and a lull for the installation of lights and lighting support systems.

9.      In <u>John N. McSweeney as Personal Representative of the Estate of Brandon J. McSweeney v. Bill Kenny productions, Inc., Lighthouse Productions, Inc. d/b/a Port Lighting Systems, and Conventures, Inc.</u>, Suffolk Superior Court Civil Action No. 2084CV02124H,  (copy of Complaint attached hereto as **Exhibit 2**), ("the McSweeney Complaint"), the Plaintiff Estate of Brandon J. McSweeney alleges that the negligence of Bill Kenny, Lighthouse and Conventures, Inc. caused the death of Brandon McSweeney.

10.     Bill Kenny provided labor and a lull operator pursuant to the subcontract

11.     As Plaintiff Estate of Brandon McSweeney alleges, an employee of Bill Kenny was operating a lull to transport a ballast.

12.     The ballast fell off the lull forks and crushed Brandon McSweeney to death.

13.     Lighthouse is an "additional insured" on the commercial general liability policy First Mercury issued to Bill Kenny and described above in Paragraph 3.

14.     First Mercury owes defense to Lighthouse for the McSweeney litigation on a primary and noncontributory basis.

15.     First Mercury owes indemnity to Lighthouse on a primary noncontributory basis for any damages assessed against Lighthouse in the McSweeney litigation.

16.     Lighthouse has written to First Mercury, advising them of this claim and requesting defense and indemnity

17.     First Mercury has denied Lighthouse's request for defense and indemnity.

<u>COUNT I – BREACH OF CONTRACT</u>

18.      Plaintiff Lighthouse repeats and realleges Paragraphs 1 through 17 above and incorporates them by reference herein.

19.     First Mercury has breached its contract to its additional insured Lighthouse by refusing to defend and indemnify Lighthouse for the claims of the Estate of Brandon McSweeney.

20.     Lighthouse has been harmed by First Mercury's breach.

**WHEREFORE**, Plaintiff Lighthouse requests judgment of its damages to be determined at trial, consisting of defense costs and any amounts paid in judgment or settlement to the Estate of Brandon McSweeney together with its costs and such other relief as the court deems just and proper

**COUNT II – DECLARATORY JUDGMENT/DEFENSE AND INDEMNITY**

21.     Plaintiff Lighthouse repeats and realleges Paragraphs 1 through 20 above and incorporates them by reference herein.

22.     An actual controversy exists between the parties pursuant to Mass. Gen. Law c. 231A.

23.     First Mercury has a duty to defend Lighthouse for the Estate of Brandon McSweeney Complaint.

24.     First Mercury has a duty to indemnify Lighthouse for the Estate of Brandon McSweeney Complaint

**WHEREFORE**, Plaintiff Lighthouse requests the court for an order declaring

that:

a. First Mercury must undertake the defense of Lighthouse for the claims

   alleged in the Estate of Brandon McSweeney Complaint;

b. First Mercury must indemnify Lighthouse for any damages or settlement

   pursuant to the Estate of Brandon Sweeney Complaint; and

c. Any other such relief this court deems just and proper.

                             Respectfully submitted,
                             Plaintiff,
                             Lighthouse Productions, Inc. d/b/a
                             Port Lighting Systems
                             By its Attorneys,


                             /s/ *Brian A. O'Connell*
                             Brian A. O'Connell - BBO #551182
                             Tucker, Dyer & O'Connell, LLP
                             199 Wells Avenue
                             Newton, MA  02459
                             Ph. (617) 986-6224
                             Fx. (617) 986-6229
                             Em. oconnell@tdolaw.com

# EXHIBIT 1



## Subcontractor Agreement

THIS **SUBCONTRACT AGREEMENT** ("Agreement") is entered into as of the Effective Date as defined herein, by and between **Lighthouse Productions, Inc.,** d/b/a Port Lighting Systems ("Port Lighting"), a New Hampshire corporation with an address of 24 London Lane, Seabrook, NH 03874 and _Bill Kenney Productions, Inc._ ("Subcontractor"), an independent contractor, with a principal place of business at _Chelmsford, MA._ ; Port Lighting and Subcontractor are collectively referred to as the "Parties".

The parties therefore agree as follows:

### ARTICLE 1. TERM OF CONTRACT

1.01. This Agreement shall be for an initial term of two (2) years (the "Initial Term") commencing on the Effective Date and terminating on the second anniversary date thereof, unless terminated earlier in accordance with the provisions of this Agreement. Thereafter, the Agreement shall be automatically renewed for additional one (1) year term unless, not less than sixty (60) days prior to the end of the Initial Term or any renewal term, either party notifies the other of its intent not to renew the Agreement. The term "Effective Date" as used in this Agreement shall mean the latter of the dates upon which this Agreement has been executed by Port Lighting and Subcontractor.

### ARTICLE 2. SERVICES TO BE PERFORMED BY SUBCONTRACTOR

2.01. **Services.**

(a) Subcontractor shall furnish and supply all labor, material, tools and equipment, and supervision, necessary to fully and promptly perform the work and services as described herein as requested from time to time by Port Lighting in support of its prime customer contracts ("Services"). Nothing herein shall be construed as a guarantee by Port Lighting of requests for Subcontractor to perform Services hereunder. Requests by Port Lighting for Subcontractor to perform services shall be initiated under Section 2.01(b).

(b) Should Port Lighting elect to engage the Services of Subcontractor under this Agreement, Port Lighting shall request a quote from Subcontractor for Services sought for a particular customer project. Upon approval of the quote by Port Lighting, Subcontractor shall issue a Work Order describing the

24 London Lane Seabrook, NH 03874, www.portlighting.com ph. 603-474-2110, fax -603-474-2227

scope of work and setting the price for Port Lighting to execute.  Such Quote and Work Order shall be incorporated by reference into this Agreement as an addendum to Exhibit A.  Such Services by Subcontractor shall conform with this Agreement and the Quote and Work Order and any written revisions agreed to by Port Lighting.  So long as such requirements are met, the manner in which the work is performed will be determined solely by the Subcontractor.

(c) In the event Subcontractor anticipates at any time that it will not reach one or more milestones or complete one or more assignments within the prescribed timetables, in the applicable Work Order, Subcontractor shall immediately so inform Port Lighting by written notice.

(d) Port Lighting may at any time, and for any reason, terminate the Services of Subcontractor or of any persons provided by Subcontractor to Port Lighting or the Customer. Subcontractor shall act promptly to remove itself and such persons from the Customer's premises. Subcontractor shall also provide a written list of all work performed and all remaining work to be completed. Subcontractor shall also act promptly to return to Port Lighting and the Customer all materials provided by Port Lighting and the Customer to Subcontractor or such persons, and to return all materials, software, data and other products created, developed or converted by Subcontractor or such persons. Port Lighting's sole liability in such event shall be to pay Subcontractor, at the rates listed in the Work Order, for the Services actually performed by Subcontractor or such persons prior to termination, provided that all work provided by Subcontractor and such persons is in compliance with the Work Order.

2.02. **Method of Performing Services.**  Subcontractor will determine the method, details, and means of performing the above-described services.

2.03. **Independent Contractor Relationship.**  Nothing contained herein or elsewhere shall give rise to, or be construed to create, any partnership, joint venture or employer-employee relationship between Port Lighting and the Subcontractor, between Port Lighting and the Subcontractor's employees, agents or independent contractors, between Port Lighting's customers and the Subcontractor, nor between such customers and the Subcontractor's employees. Rather, it is the specific intent of the Parties that the Subcontractor shall be an independent contractor to Port Lighting. Port Lighting is interested only in the results achieved by the services provided by the Subcontractor. The manner of legally achieving those results is the responsibility of the Subcontractor.

2.04. **Tax Matters.**  Because Subcontractor is an independent contractor, Port Lighting will not withhold from any compensation paid to Subcontractor any amounts for federal or state income taxes, or social security (FICA) for Subcontractor, nor will Port Lighting pay any social security or unemployment tax with respect to Subcontractor.  Such taxes are the responsibility of Subcontractor.  Subcontractor, on behalf of itself and its successor, assigns, and heirs, agree to indemnify and hold Port Lighting, including Port Lighting's employees, officers, directors, agents, subsidiaries and affiliates, harmless from and against any damage, claim, assessment, interest charge or penalty incurred by or charged to Port Lighting as a result of any claim, cause of action or assessment by any federal or state government or agency for any non-payment or late payment by Subcontractor of any tax or contribution based on compensation paid

hereunder to Subcontractor or because Port Lighting did not withhold any taxes from compensation paid hereunder.  This section shall survive termination of this Agreement.

2.05. **Use of Employees or Subcontractors.**  Subcontractor may, at Subcontractor's own expense, use any employees or sub-subcontractors as Subcontractor deems necessary to perform the services required of Subcontractor by this Agreement. Port Lighting may not control, direct, or supervise Subcontractor's employees or sub-subcontractors in the performance of those services.

### ARTICLE 3. COMPENSATION

3.01. **Compensation.**  Port Lighting agrees to pay Subcontractor according to the schedule of payments in the applicable Work Order signed by Port Lighting.

3.02. **Date for Payment of Compensation.**  For Services rendered under this Agreement, Port Lighting agrees to pay Subcontractor the sums set forth in Section 3.01 within the time frame set forth in the Work Order and in accordance with this Agreement.

3.03. **Payment of Expenses.**  Subcontractor will be responsible for all expenses incurred in performing Services under this Agreement.

### ARTICLE 4. OBLIGATIONS OF SUBCONTRACTOR

4.01. **Non-Exclusive Relationship.**  Subcontractor may represent, perform services for, and contract with as many additional agencies, clients, persons, or companies as Subcontractor, in its sole discretion, sees fit.

4.02. **Time and Place of Performing Work.**  Subcontractor will perform the Services under this Agreement at the premises of Port Lighting's customer's location during customer's regular business hours or as otherwise directed by Port Lighting or its Customer.

4.03. **Tools, Materials, and Equipment.**  Subcontractor will supply all tools, materials, and equipment required to perform the services under this Agreement.

4.04. **Insurance.**  Subcontractor agrees to obtain and maintain in force during the term of this Agreement: (i) Workers' Compensation insurance as required by the law of the state in which any work is performed; (ii) employer's liability insurance with limits of at least $1,000,000 for each occurrence; (iii) automobile liability insurance with limits of at least $1,000,000 combined single limit for bodily injury and property damage per occurrence; (iv) Commercial General Liability (CGL) insurance, with limits of at least $1,000,000 each occurrence and $2,000,000 General Aggregate per project, and $2,000,000 Products-Completed Operations Aggregate; and (v) Umbrella coverage with limits of at least $1,000,000. All Subcontractor CGL, Umbrella and automotive liability insurance shall designate Port Lighting and its customer and each of their directors, officers and employees as additional insureds and shall be obtained on an occurrence basis.  All such insurance must be primary and non-contributory and required to respond and pay prior to any other insurance or self-insurance available.  Any other coverage available to Port Lighting and Subcontractor shall apply on an excess basis.  Subcontractor

agrees that Subcontractor, Subcontractor's insurer(s) and anyone claiming by, through, under or in Subcontractor's behalf shall have no claim, right of action or right of subrogation against Port Lighting and its customers based on any loss or liability insured against under the foregoing insurance. Subcontractor shall furnish upon the Effective Date and prior to commencing any work under this Agreement certificates or adequate proof of the foregoing insurance including, if specifically requested by Port Lighting, copies of the endorsements and policies.  Port Lighting shall be notified in writing at least 30 days prior to cancellation of or any material change in the policy.  Insurance companies providing coverage under this Agreement must be rated by A.M. Best with at least an A- rating and a financial size category of at least Class VII.  Subcontractor shall maintain the insurance for 1 year after termination of this Agreement.  The above requirements shall also apply to any subcontractors hired by the Subcontractor.

4.05. **Subcontractor's Qualifications.**  Subcontractor represents that it has the qualifications and skills necessary to perform the services under this Agreement in a competent, professional and workmanlike manner, without the advice or direction of Port Lighting. This means Subcontractor is able to fulfill the requirements of this Agreement. Failure to perform all the services required under this Agreement constitutes a material breach of the Agreement. Subcontractor has complete and sole discretion for the manner in which the work under this Agreement will be performed.

4.06. **Indemnity.**  Each party shall defend, indemnify and hold harmless the other party, its affiliates, officers, directors, shareholders, employees, customers, and agents from and against any and all claims, actions, demands, lawsuits, losses, damages, costs, expenses, judgments, fines, penalties, liabilities or other economic loss (including reasonable attorneys' fees and courts costs) incurred in connection with any demands, assertions, claims, suits, actions or other proceedings:  (i) alleging that the Indemnifying Party's services violate any applicable law, rule, regulation or judicial order, or (ii) arising from the acts or omissions of the Indemnifying Party or its employees, subcontractors or agents in connection with the performance of the Services (in each case a "Claim"); except to the extent that a Claim arises from or is caused by the sole negligence or willful misconduct of the Indemnified Party.  The Indemnified Party shall promptly notify the Indemnifying Party in writing of any Claim and give complete control of the defense and settlement of the Claim to the Indemnifying Party.  The Indemnified Party shall fully cooperate with the Indemnifying Party, its insurance company and its legal counsel in its defense of such Claim(s).  This indemnity shall not cover any Claims in which the Indemnified Party fails to provide the Indemnifying Party with prompt written notice, which lack of notice prejudices the defense of the Claim.  This section shall survive termination of this Agreement.

4.07. **Assignment.**  Neither this Agreement nor any duties or obligations under this Agreement may be assigned by Subcontractor without the prior written consent of Port Lighting.

4.08  **Warranty.**  Subcontractor expressly warrants that the services provided to Port Lighting and the Customer under this Agreement shall conform with applicable Work Order. Subcontractor agrees that it shall not be relieved of the foregoing express warranty, even if Subcontractor uses its best efforts to remedy any failure to conform with the applicable Work Order.  This section shall survive termination of this Agreement.

4.09 **Ownership.** All right, title and interest in and to all patents, copyrights, trade secrets, trademarks, know-how, software code, programs, data and databases and other intellectual property created, developed or converted hereunder (the "Intellectual Property") are hereby, upon Subcontractor's creation thereof, transferred and assigned to Port Lighting and otherwise vested exclusively in Port Lighting. Subcontractor shall obligate its employees, agents and independent contractors to provide and supply to Port Lighting at no additional cost, all such assignments, rights, and covenants as Port Lighting deems appropriate to assure and perfect such transfer, assignment and other vesting. All Intellectual Property created, developed or converted under this Agreement shall be deemed to be a "work made for hire" to the fullest extent allowed by law. This section shall survive termination of this Agreement.

### ARTICLE 5. OBLIGATIONS OF PORT LIGHTING

5.01. **Cooperation of Port Lighting.** Port Lighting agrees to comply with all reasonable requests of Subcontractor necessary to the performance of Subcontractor's duties under this Agreement.

### ARTICLE 6. TERMINATION OF AGREEMENT

6.01. **Expiration of Agreement.** Unless otherwise terminated as provided in this Agreement, this Agreement will continue in effect for the term specified in section 1.01 or any renewal thereof and shall then terminate.

6.02. **Termination.** (a) This Agreement may be terminated by Port Lighting in whole or in part at any time and for any reason, and any Work Order issued or entered hereunder may be immediately terminated in whole or in part by Port Lighting upon the occurrence of any of the following:

(1) The termination of a prime customer contract between Port Lighting and its customer;

(2) Amendment of such prime customer contract such that the Services specified in a purchase order are no longer required;

(3) Port Lighting or its Customer no longer requires such Services from Subcontractor; or

(4) Bankruptcy, insolvency or death or dissolution of Subcontractor.

(b) Subcontractor may terminate this Agreement in whole or in part upon Port Lighting's material breach where such breach continues for a period of ten (10) business days following Port Lighting's receipt of written notice, unless Port Lighting is able to cure such breach within a reasonable time and so notifies Subcontractor.

(c) Accrued liabilities under this Agreement shall remain in full force and effect in the event of termination under Article 6.

### ARTICLE 7. GENERAL PROVISIONS

7.01. **Notices.** Any notices required to be given under this Agreement by either party to the other shall be in writing and shall be transmitted either by (i) registered mail, (ii) certified mail, return receipt requested, or (iii) overnight mail, addressed to the party to be notified at the address as set forth above or to such other address (or person) as such party shall specify by like notice hereunder.

7.02. **Entire Agreement of the Parties Modifications.**  This Agreement, together with all the Quotes and Work Orders, change orders, attachments, exhibits, specifications, and other terms referenced in this Agreement, contains the entire agreement of the Parties and supersedes any and all prior agreements, understandings and communications between Port Lighting and Subcontractor related to the subject matter of this Agreement.  Except as authorized herein, no amendment or modification of this Agreement shall bind either Party unless it is in writing and is signed by an authorized representative of Port Lighting and Subcontractor.  Each party to this Agreement acknowledges that no representations, inducements, promises, or agreements, orally or otherwise, have been made by any party, or anyone acting on behalf of any party, which are not contained in this Agreement, and that no other agreement, statement, or promise not contained in this Agreement will be valid or binding.

7.03. **Partial Invalidity.**  If any provision of this Agreement is held by a court of competent jurisdiction to be invalid, void, or unenforceable, the remaining provisions will continue in full force and effect without being impaired or invalidated in any way.

7.04. The Parties hereby agree that any action arising out of this Agreement will be brought solely in any state or federal court located in the State of New Hampshire.  Both Parties hereby submit to the jurisdiction and venue of any such court.  THE PARTIES FURTHER AGREE, TO THE EXTENT PERMITTED BY APPLICABLE LAW, TO WAIVE ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY CLAIM, COUNTERCLAIM OR ACTION ARISING FROM THE TERMS OF THIS AGREEMENT.  This section shall survive termination of this Agreement.

7.05. **Governing Law.**  This Agreement will be governed by and construed in accordance with the laws of the State of New Hampshire without regard to its conflicts of laws principles.

7.06 **Confidentiality and Intellectual Property.**  Each party acknowledges that the other party considers certain of its documents and information, including that of Port Lighting's customers, to be confidential or proprietary when identified in writing, as such or when, under the circumstances surrounding the disclosure, otherwise readily apparent as such, including information about either party's services, products, software, and deliverables addressed under this Agreement ("Confidential Information").  The receiving party shall: (i) use such Confidential Information solely for the purpose of performing its obligations under this Agreement; (ii) protect such Confidential Information against disclosure to any person or entity other than its employees or other representatives by means of reasonable security measures, which shall be no less than the measures it uses to protect its own Confidential Information; and (iii) be and remain responsible for any breach of the foregoing obligations by its employees or other representatives.  The foregoing obligations shall not apply to any Confidential Information that the receiving party can establish by written evidence: (w) was independently developed by the receiving party from a third party having the legal right to furnish such Confidential Information of the disclosing party; (x) was acquired by the receiving party from a third party having the legal right to furnish such Confidential Information to the receiving party; (y) is generally known by or available to the public through no fault of the receiving party; or (z) is required by order of a court or governmental agency to be disclosed, so long as the receiving party gives prompt written notice to the disclosing party of such order and reasonably cooperates with the disclosing party to resist or limit such order.  Upon

termination or expiration of this Agreement and written request of the disclosing party, the receiving party shall destroy all copies of any Confidential Information and certify such destruction has occurred or, at the disclosing party's expense, return such Confidential Information to the disclosing party. Without prejudice to any other right or remedy, the disclosing party shall be entitled to injunctive or other equitable relief for the receiving party's breach of this section.  This section shall survive termination of this Agreement.

Notwithstanding any provision of this Agreement, any content, methodologies, processes, techniques, ideas, concepts, trade secrets, know-how, copyright, trademark, or patent right and any other intellectual property right addressed under this Agreement shall remain the property of and be owned exclusively by Port Lighting, and its third party licensors.  Port Lighting shall not obtain any right in Subcontractor supplied data, trademarks, logos or other graphics or unique text or information pertinent to Subcontractor's business.

7.07. **Force Majeure.**  Neither Party shall be liable hereunder for any failure or delay in the performance of its obligations under this Agreement, except for the payment of money, if such failure or delay is on account of causes beyond its control, including labor disputes, civil commotion, war, fires, floods, inclement weather, governmental regulations or controls, casualty, government authority, strikes, or acts of God, in which event the non-performing Party shall be excused from its obligations for the period of the delay and for a reasonable time thereafter.  Each party will use commercially reasonable efforts to take actions it deems appropriate to remedy and avoid such events.

7.08. **Waiver; Rights Cumulative.**  No waiver of any term or right in this Agreement shall be effective unless in writing, signed by an authorized representative of the waiving party.  The failure of either party to enforce any provision of this Agreement shall not be construed as a waiver or modification of such provision, or impairment of its right to enforce such provision or any other provision of this Agreement thereafter.  The rights and remedies of the Parties herein provided shall be cumulative and not exclusive of any rights or remedies provided by law or equity.  This section shall survive termination of this Agreement.

7.09. **Counterparts.**  This Agreement may be executed by facsimile and in one or more counterparts, each of which will be deemed to be an original, but all of which together will constitute one and the same instrument, without necessity of production of the others.

Each party is signing this Agreement on the date set forth below.

**LIGHTHOUSE PRODUCTION SYSTEMS, INC.**

By _____ [signature]

Name: _____

Title: _____

Date: _____

**SUBCONTRACTOR**

By _____ [signature]

Name: _____

Title: _____

Date: _____

S:\LA-LI\Lighthouse Productions, Inc\Documents\Subcontractor Agreement 01062016.docx

Exhibit A

Work Orders

[All Work Orders entered into under the terms of this Agreement are hereby incorporated by reference under this Exhibit]

# EXHIBIT 2

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.                          SUPERIOR COURT
                                     DOCKET NO.: 2084CV02124H¾

| | |
|---|---|
| JOHN N. MCSWEENEY AS | ) |
| PERSONAL REPRESENTATIVE OF THE | ) |
| ESTATE OF BRANDON J. MCSWEENEY | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| BILL KENNEY PRODUCTIONS, INC., | ) |
| LIGHTHOUSE PRODUCTIONS, INC. | ) |
| D/B/A PORT LIGHTING SYSTEMS | ) |
| AND CONVENTURES, INC. | ) |
| | ) |
| Defendants. | ) |

RECEIVED

SEP 21 2020

SUPERIOR COURT-CIVIL
MICHAEL JOSEPH DONOVAN
CLERK/MAGISTRATE

## COMPLAINT AND JURY DEMAND

### PARTIES

1. The Plaintiff John N. McSweeney, of 21 Putting Green Circle, S. Yarmouth, Barnstable County, Commonwealth of Massachusetts, is the duly appointed Personal Representative of the Estate of Brandon J. McSweeney.

2. Brandon J. McSweeney, formerly of 82 Merrimack Street, Woburn, Middlesex County, Commonwealth of Massachusetts, died on December 28, 2019. At the time of McSweeney's death he was 34 years old.

3. John N. McSweeney and Sheryl McSweeney are Brandon J. McSweeney's surviving parents and the sole heirs at law of Brandon J. McSweeney.

4. The Defendant Bill Kenney Productions, Inc. is a Massachusetts corporation with a usual place of business at 4 Archway Drive, Chelmsford, Middlesex County, Commonwealth of Massachusetts.

5. The Defendant Lighthouse Productions, Inc. d/b/a Port Lighting Systems is a New Hampshire corporation with a usual place of business at 24 London Lane, Seabrook, New Hampshire, with a Massachusetts registered agent located at: Incorp. Services, Inc., 10 Milk Street, Suite 1055, Boston, Suffolk County, Commonwealth of Massachusetts.

1

6.  The Defendant Conventures, Inc., is a Massachusetts corporation with a usual place of business located at 88 Black Falcon Avenue, Suite 202, Boston, Suffolk County, Commonwealth of Massachusetts.

## FACTUAL ALLEGATIONS

7.  The City of Boston hosts a yearly First Night celebration on December 31st of each year.

8.  The Defendant Conventures, Inc. coordinates and plans the First Night celebration and was responsible for selecting and hiring qualified contractors, coordinating the lighting and staging and booking the entertainment for the First Night Celebration in Copley Square.

9.  The Defendant Lighthouse Productions, Inc. d/b/a Port Lighting Systems was the general contractor in charge of erecting the staging and lighting systems for the First Night celebration in Copley Square, City of Boston, Suffolk County, Commonwealth of Massachusetts, and was further responsible for providing the components for the staging and lighting system and selecting and hiring qualified subcontractors to assist in the erection of the staging and lighting system.

10. The Defendant Lighthouse Productions, Inc. d/b/a Port Lighting Systems subcontracted with the Defendant Bill Kenney Productions, Inc. to provide labor and equipment for the erection of the staging and lighting systems for the First Night celebration in Copley Square.

11. On January 28, 2019, Brandon J. McSweeney was employed as a rigger for United Staging and Rigging, Inc., and was assisting with the installation of a lighting tower for the event in Copley Square.

12. At all times relevant, Brandon J. McSweeney was exercising due care and caution for his own safety and well-being and at all relevant times was acting in his capacity as an employee of United Staging and Rigging, Inc.

13. Bill Kenney Productions Inc. rented a JCB model 505-20 telehandler ("the lull") from United Rentals, Inc. for the use in the erection of the staging and lighting system.

14. At approximately 9:45 a.m., an employee of Bill Kenney Productions, Inc. was operating the lull to transport a 3,100 pound ballast used to secure the lighting stanchion.

15. The individual hired by Bill Kenney Productions, Inc. to operate the lull was not properly licensed to operate the lull and did not have the proper education, training and experience to operate the lull.

16. During the course of installing the ballast, Brandon J. McSweeney was assisting in the placement of the ballast for the lighting stanchion.

17. Conventures, Inc. had contracted with Lighthouse Productions, Inc. d/b/a Port Lighting Systems to install the lighting system, and such installation included the placement of the

ballast for the lighting stanchion, as well as the supervision, construction management and site safety for installation of the stage, lighting system and the placement of the ballast. In turn, Lighthouse Productions, Inc. d/b/a Port Lighting Systems subcontracted with Bill Kenney Productions, Inc., for the installation of the lighting system and the placement of the ballast and the placement of the subject ballast was required by the terms and conditions of the parties' applicable contracts.

18. The 3,100 pound ballast fell off the lull forks and crushed Brandon J. McSweeney to death.

19. The Defendants failed to ensure that the lull operator was properly licensed, trained and experienced to operate the lull.

20. The Defendants failed to ensure that the ballast was properly secured to the lull.

21. The Defendants failed to ensure that the ballast was properly balanced on the lull.

22. The Defendants failed to initiate and maintain programs which provided for frequent and regular inspections of the job site, materials and equipment by a competent person.

23. The Defendants failed to adequately inspect the job site to ensure that it was free from recognizable hazards, such, as unstable loads, inadequately trained operators and ground conditions.

24. The Defendants failed to adequately instruct their employees to recognize and avoid unsafe conditions, apply the state and federal regulations applicable to the work environment and control or eliminate any hazards or other exposure to injury.

25. As described above, the Defendants' conduct was negligent.

26. As described above, the Defendants' conduct was grossly negligent.

27. The Defendants' acts and omissions, as described above, proximately caused the death of Brandon J. McSweeney, and further caused John N. McSweeney and Sheryl McSweeney, Brandon J. McSweeney's surviving parents and sole heirs at law, to suffer the loss of services, protections, care, assistance, society, companionship, comfort, guidance, counsel, and advice of Brandon J. McSweeney.

## COUNT I
### JOHN N. MCSWEENEY AS PERSONAL REPRESENTATIVE OF THE ESTATE OF BRANDON J. MCSWEENEY V.  BILL KENNEY PRODUCTIONS, INC.
### *(WRONGFUL DEATH)*

28. The Plaintiff realleges and repeats the allegations of paragraphs 1 through 27 of this Complaint as if expressly rewritten and set forth herein.

29. The Defendant owed Brandon J. McSweeney the duty to act with reasonable care and comply with all federal and state construction safety regulations.

30. The Defendant breached its duty of care and was negligent by failing to properly supervise and inspect the job site, hire qualified and competent contractors and construction supervisors, ensure that the lull operator was properly licensed and trained, provide a safe workplace, ensure that the ballast was properly balanced and secured on the lull, and comply with applicable state and federal safety regulations.

31. As a direct and proximate cause of the Defendant's negligence, Brandon J. McSweeney was crushed by a 3,100 pound ballast and died.

32. As a further result thereof, the Plaintiff John N. McSweeney, as Personal Representative of the Estate of Brandon J. McSweeney, brings this count for the wrongful death of Brandon J. McSweeney pursuant to *M.G.L. C. 229 § 2* as amended. The next of kin of the decedent are entitled to the fair monetary value of the decedent, including but not limited to, compensation for the loss of the services, protections, care, assistance, society, companionship, comfort, guidance, counsel, and advice of the decedent and for the reasonable medical, funeral and burial expenses incurred, and punitive damages.

**WHEREFORE**, the Plaintiff, John N. McSweeney, as Personal Representative of the Estate of Brandon J. McSweeney, demands judgment against the Defendant Bill Kenney Productions, Inc. for actual and compensatory damages, punitive damages, together with interest and costs, attorney's fees and such further relief as this court deems just and proper.

## COUNT II
### JOHN N. MCSWEENEY AS PERSONAL REPRESENTATIVE OF THE ESTATE OF BRANDON J. MCSWEENEY V. LIGHTHOUSE PRODUCTIONS, INC. D/B/A PORT LIGHTING SYSTEMS
### *(WRONGFUL DEATH)*

33. The Plaintiff realleges and repeats the allegations of paragraphs 1 through 32 of this Complaint as if expressly rewritten and set forth herein.

34. The Defendant owed Brandon J. McSweeney the duty to act with reasonable care and comply with all federal and state construction safety regulations.

35. The Defendant breached its duty of care and was negligent by failing to properly supervise and inspect the job site, hire qualified and competent contractors and construction supervisors, ensure that the lull operator was properly licensed and trained, provide a safe workplace, ensure that the ballast was properly balanced and secured on the lull, and comply with applicable state and federal safety regulations.

36. As a direct and proximate cause of the Defendant's negligence, Brandon McSweeney was crushed by a 3,100 pound ballast and died.

37. As a further result thereof, the Plaintiff John N. McSweeney, as Personal Representative of the Estate of Brandon J. McSweeney, brings this count for the wrongful death of Brandon J. McSweeney pursuant to *M.G.L. C. 229 § 2* as amended. The next of kin of the decedent are entitled to the fair monetary value of the decedent, including but not limited to, compensation for the loss of the services, protections, care, assistance, society, companionship, comfort, guidance, counsel, and advice of the decedent and for the reasonable medical, funeral and burial expenses incurred, and punitive damages.

**WHEREFORE**, the Plaintiff, John N. McSweeney, as Personal Representative of the Estate of Brandon J. McSweeney, demands judgment against the Defendant Lighthouse Productions, Inc. d/b/a Port Lighting Systems for actual and compensatory damages, punitive damages, together with interest and costs, attorney's fees and such further relief as this court deems just and proper.

## COUNT III
### JOHN N. MCSWEENEY AS PERSONAL REPRESENTATIVE OF THE ESTATE OF BRANDON J. MCSWEENEY V. CONVENTURES, INC.
### *(WRONGFUL DEATH)*

38. The Plaintiff realleges and repeats the allegations of paragraphs 1 through 37 of this Complaint as if expressly rewritten and set forth herein.

39. The Defendant owed Brandon J. McSweeney the duty to act with reasonable care and comply with all federal and state construction safety regulations.

40. The Defendant breached its duty of care and was negligent by failing to properly supervise and inspect the job site, hire qualified and competent contractors and construction supervisors, ensure that the lull operator was properly licensed and by failing to provide a safe workplace in accordance with state and federal regulations.

41. As a direct and proximate cause of the Defendant's negligence, Brandon J. McSweeney was crushed by a 3,100 pound ballast and died.

42. As a further result thereof, the Plaintiff John N. McSweeney, as Personal Representative of the Estate of Brandon J. McSweeney, brings this count for the wrongful death of Brandon J. McSweeney pursuant to *M.G.L. C. 229 § 2* as amended. The next of kin of the decedent are entitled to the fair monetary value of the decedent, including but not limited to, compensation for the loss of the services, protections, care, assistance, society, companionship, comfort, guidance, counsel, and advice of the decedent and for the reasonable medical, funeral and burial expenses incurred, and punitive damages.

**WHEREFORE**, the Plaintiff, John N. McSweeney, as Personal Representative of the Estate of Brandon McSweeney, demands judgment against the Defendant Conventures, Inc. for actual and compensatory damages, punitive damages, together with interest and costs, attorney's fees and such further relief as this court deems just and proper.

**COUNT IV**
**JOHN N. MCSWEENEY AS PERSONAL REPRESENTATIVE OF THE ESTATE OF BRANDON J. MCSWEENEY V.  BILL KENNEY PRODUCTIONS, INC.**
*(CONSCIOUS PAIN AND SUFFERING)*

43. The Plaintiff realleges and repeats the allegations of paragraphs 1 through 42 of this Complaint as if expressly rewritten and set forth herein.

44. The Defendant owed Brandon J. McSweeney the duty to act with reasonable care and comply with all federal and state construction safety regulations.

45. The Defendant breached its duty of care and was negligent by failing to properly supervise and inspect the job site, hire qualified and competent contractors and construction supervisors, ensure that the lull operator was properly licensed and trained, provide a safe workplace, ensure that the ballast was properly balanced and secured on the lull, and comply with applicable state and federal safety regulations.

46. As a direct and proximate cause of the Defendant's negligence, Brandon J. McSweeney was crushed by a 3,100 pound ballast and died.

47. Brandon J. McSweeney was initially conscious and suffered extreme conscious pain and suffering in the final moments of his life.

48. Pursuant to *M.G.L. C. 229 § 2 and § 6*, John N. McSweeney, as Personal Representative of the Estate of Brandon J. McSweeney, is entitled to recover damages for conscious pain and suffering on behalf of Brandon J. McSweeney's heirs.

**WHEREFORE**, the Plaintiff, John N. McSweeney, as Personal Representative of the Estate of Brandon J. McSweeney, demands judgment against the Defendant Bill Kenney Productions, Inc., for actual and compensatory damages for conscious pain and suffering, together with interest and costs, attorney's fees and such further relief as this court deems just and proper.

## COUNT V
### JOHN N. MCSWEENEY AS PERSONAL REPRESENTATIVE OF THE ESTATE OF BRANDON J. MCSWEENEY V.  LIGHTHOUSE PRODUCTIONS, INC. D/B/A PORT LIGHTING SYSTEMS
### *(CONSCIOUS PAIN AND SUFFERING)*

49. The Plaintiff realleges and repeats the allegations of paragraphs 1 through 48 of this Complaint as if expressly rewritten and set forth herein.

50. The Defendant owed Brandon J. McSweeney the duty to act with reasonable care and comply with all federal and state construction safety regulations.

51. The Defendant breached its duty of care and was negligent by failing to properly supervise and inspect the job site, hire qualified and competent contractors and construction supervisors, ensure that the lull operator was properly licensed and trained, provide a safe workplace, ensure that the ballast was properly balanced and secured on the lull, and comply with applicable state and federal safety regulations.

52. As a direct and proximate cause of the Defendant's negligence, Brandon J. McSweeney was crushed by a 3,100 pound ballast and died.

53. Brandon J. McSweeney was initially conscious and suffered extreme conscious pain and suffering in the final moments of his life.

54. Pursuant to *M.G.L. C. 229 § 2 and § 6*, John N. McSweeney, as Personal Representative of the Estate of Brandon J. McSweeney, is entitled to recover damages for conscious pain and suffering on behalf of Brandon J. McSweeney's heirs.

**WHEREFORE**, the Plaintiff, John N. McSweeney, as Personal Representative of the Estate of Brandon J. McSweeney, demands judgment against the Defendant Lighthouse Productions Inc., d/b/a/ Port Lighting Systems, for actual and compensatory damages for conscious pain and suffering, together with interest and costs, attorney's fees and such further relief as this court deems just and proper.

## COUNT VI
### JOHN N. MCSWEENEY AS PERSONAL REPRESENTATIVE OF THE ESTATE OF BRANDON J. MCSWEENEY V.  CONVENTURES, INC.
### *(CONSCIOUS PAIN AND SUFFERING)*

55. The Plaintiff realleges and repeats the allegations of paragraphs 1 through 54 of this Complaint as if expressly rewritten and set forth herein.

56. The Defendant owed Brandon J. McSweeney the duty to act with reasonable care and comply with all federal and state construction safety regulations.

57. The Defendant breached its duty of care and was negligent by failing to properly supervise and inspect the job site, hire qualified and competent contractors and construction supervisors, ensure that the lull operator was properly licensed and trained, provide a safe workplace, ensure that the ballast was properly balanced and secured on the lull, and comply with applicable state and federal safety regulations.

58. As a direct and proximate cause of the Defendant's negligence, Brandon J. McSweeney was crushed by a 3,100 pound ballast and died.

59. Brandon J. McSweeney was initially conscious and suffered extreme conscious pain and suffering in the final moments of his life.

60. Pursuant to *M.G.L. C. 229 § 2 and § 6*, John N. McSweeney, as Personal Representative of the Estate of Brandon J. McSweeney, is entitled to recover damages for conscious pain and suffering on behalf of Brandon J. McSweeney's heirs.

**WHEREFORE**, the Plaintiff, John N. McSweeney, as Personal Representative of the Estate of Brandon J. McSweeney, demands judgment against the Defendant Conventures, Inc. for actual and compensatory damages for conscious pain and suffering, together with interest and costs, attorney's fees and such further relief as this court deems just and proper.

## COUNT VII
### JOHN N. MCSWEENEY AS PERSONAL REPRESENTATIVE OF THE ESTATE OF BRANDON J. MCSWEENEY V.  BILL KENNEY PRODUCTIONS, INC.
#### *(GROSS NEGLIGENCE)*

61. The Plaintiff realleges and repeats the allegations of paragraphs 1 through 60 of this Complaint as if expressly rewritten and set forth herein.

62. The Defendant owed Brandon McSweeney the duty to act with reasonable care and comply with all federal and state construction safety regulations.

63. The Defendant breached its duty of care and was negligent by failing to properly supervise and inspect the job site, hire qualified and competent contractors, ensure that the lull operator was properly licensed and trained, provide a safe workplace, ensure that the ballast was properly balanced and secured on the lull, and comply with applicable state and federal safety regulations.

64. The Defendant knew or should have known that its acts and omissions created unacceptable hazards dangerous to persons at or near the construction site, or in the vicinity of the lull,

and specifically to the decedent Brandon J. McSweeney, and such acts and omissions rose to the level of malicious, willful, wanton, or reckless conduct or negligence.

65. As a direct and proximate cause of the Defendant's willful, wanton, or reckless conduct or gross negligence, Brandon McSweeney was crushed by a 3,100 pound ballast and died.

66. As a further result thereof, the Plaintiff John N. McSweeney, as Personal Representative of the Estate of Brandon J. McSweeney, brings this count for the wrongful death of Brandon J. McSweeney pursuant to *M.G.L. C. 229 § 2* as amended. The next of kin of the decedent are entitled to the fair monetary value of the decedent, including but not limited to, compensation for the loss of the services, protections, care, assistance, society, companionship, comfort, guidance, counsel, and advice of the decedent and for the reasonable medical, funeral and burial expenses incurred, and punitive damages.

**WHEREFORE**, the Plaintiff, John N. McSweeney, as Personal Representative of the Estate of Brandon J. McSweeney, demands judgment against the Defendant Bill Kenney Productions, Inc., for actual and compensatory damages, punitive damages, together with interest and costs, attorney's fees and such further relief as this court deems just and proper.

## COUNT VIII
### JOHN N. MCSWEENEY AS PERSONAL REPRESENTATIVE OF THE ESTATE OF BRANDON J. MCSWEENEY V.  LIGHTHOUSE PRODUCTIONS, INC. D/B/A PORT LIGHTING SYSTEMS
### *(GROSS NEGLIGENCE)*

67. The Plaintiff realleges and repeats the allegations of paragraphs 1 through 66 of this Complaint as if expressly rewritten and set forth herein.

68. The Defendant owed Brandon McSweeney the duty to act with reasonable care and comply with all federal and state construction safety regulations.

69. The Defendant breached its duty of care and was negligent by failing to properly supervise and inspect the job site, hire qualified and competent contractors, ensure that the lull operator was properly licensed and trained, provide a safe workplace, ensure that the ballast was properly balanced and secured on the lull, and comply with applicable state and federal safety regulations.

70. The Defendant knew or should have known that its acts and omissions created unacceptable hazards dangerous to persons at or near the construction site, or in the vicinity of the lull, and specifically to the decedent Brandon J. McSweeney, and such acts and omissions rose to the level of malicious, willful, wanton, or reckless conduct or negligence.

71. As a direct and proximate cause of the Defendant's willful, wanton, or reckless conduct or gross negligence, Brandon McSweeney was crushed by a 3,100 pound ballast and died.

72. As a further result thereof, the Plaintiff John N. McSweeney, as Personal Representative of the Estate of Brandon J. McSweeney, brings this count for the wrongful death of Brandon J. McSweeney pursuant to *M.G.L. C. 229 § 2* as amended. The next of kin of the decedent are entitled to the fair monetary value of the decedent, including but not limited to, compensation for the loss of the services, protections, care, assistance, society, companionship, comfort, guidance, counsel, and advice of the decedent and for the reasonable medical, funeral and burial expenses incurred, and punitive damages.

**WHEREFORE**, the Plaintiff, John N. McSweeney, as Personal Representative of the Estate of Brandon J. McSweeney, demands judgment against the Defendant Lighthouse Productions, Inc. for actual and compensatory damages, punitive damages, together with interest and costs, attorney's fees and such further relief as this court deems just and proper.

## COUNT IX
### JOHN N. MCSWEENEY AS PERSONAL REPRESENTATIVE OF THE ESTATE OF BRANDON J. MCSWEENEY V.  CONVENTURES, INC.
### *(GROSS NEGLIGENCE)*

73. The Plaintiff realleges and repeats the allegations of paragraphs 1 through 72 of this Complaint as if expressly rewritten and set forth herein.

74. The Defendant owed Brandon McSweeney the duty to act with reasonable care and comply with all federal and state construction safety regulations.

75. The Defendant breached its duty of care and was negligent by failing to properly supervise and inspect the job site, hire qualified and competent contractors, ensure that the lull operator was properly licensed and trained, provide a safe workplace, ensure that the ballast was properly balanced and secured on the lull, and comply with applicable state and federal safety regulations.

76. The Defendant knew or should have known that its acts and omissions created unacceptable hazards dangerous to persons at or near the construction site, or in the vicinity of the lull, and specifically to the decedent Brandon J. McSweeney, and such acts and omissions rose to the level of malicious, willful, wanton, or reckless conduct or negligence.

77. As a direct and proximate cause of the Defendant's willful, wanton, or reckless conduct or gross negligence, Brandon McSweeney was crushed by a 3,100 pound ballast and died.

78. As a further result thereof, the Plaintiff John N. McSweeney, as Personal Representative of the Estate of Brandon J. McSweeney, brings this count for the wrongful death of Brandon J. McSweeney pursuant to *M.G.L. C. 229 § 2* as amended. The next of kin of the decedent are entitled to the fair monetary value of the decedent, including but not limited to, compensation for the loss of the services, protections, care, assistance, society,

companionship, comfort, guidance, counsel, and advice of the decedent and for the reasonable medical, funeral and burial expenses incurred, and punitive damages.

**WHEREFORE**, the Plaintiff, John N. McSweeney, as Personal Representative of the Estate of Brandon J. McSweeney, demands judgment against the Defendant Conventures, Inc. for actual and compensatory damages, punitive damages, together with interest and costs, attorney's fees and such further relief as this court deems just and proper.

## THE PLAINTIFF DEMANDS A TRIAL BY JURY

Respectfully submitted,
For the Plaintiff,
By her attorney,

Joseph T. Doyle, Jr., Esq. BBO # 133440
Matthew W. Perkins, Esq. BBO # 564868
Lecomte, Emanuelson and Doyle
Batterymarch Park II
One Pine Hill Drive, Suite 101
Quincy, MA 02169
(617) 328-1900
jdoyle@lecomtelaw.com
mperkins@lecomtelaw.com

Dated:  September 21, 2020

11

| CIVIL ACTION COVER SHEET | DOCKET NUMBER | Trial Court of Massachusetts<br>The Superior Court |
|---|---|---|

**PLAINTIFF(S):** Lighthouse Productions, Inc. d/b/a Port Lighting Systems

**ADDRESS:** 24 London Lane

Seabrook, New Hampshire

**ATTORNEY:** Brian A. O'Connell

**ADDRESS:** Tucker, Dyer & O'Connell, LLP

199 Wells Avenue, Suite 301, Newton, MA  02459

617-986-6220

**BBO:** 551182

**COUNTY**

**SUFFOLK**

**DEFENDANT(S):** First Mercury Insurance Company

**E-FILE 12/2/2020**

**ADDRESS:** One South Wacker Drive, Suite 2380

Chicago, Illinois

## TYPE OF ACTION AND TRACK DESIGNATION (see reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| D13 | Declaratory Judgment, G.L. c.231A | A | ☐ YES   ☒ NO |

*If "Other" please describe: _____

## STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff counsel relies to determine money damages.  For this form, disregard double or treble damage claims; indicate single damages only.

### TORT CLAIMS
(attach additional sheets as necessary)

A. Documented medical expenses to date:
    1. Total hospital expenses ............................................................................................ $ _____
    2. Total doctor expenses ............................................................................................. $ _____
    3. Total chiropractic expenses .................................................................................... $ _____
    4. Total physical therapy expenses ............................................................................. $ _____
    5. Total other expenses (describe below) .................................................................... $ _____
                                                              Subtotal (A): $ _____

B. Documented lost wages and compensation to date ....................................................... $ _____
C. Documented property damages to dated ....................................................................... $ _____
D. Reasonably anticipated future medical and hospital expenses ...................................... $ _____
E. Reasonably anticipated lost wages .............................................................................. $ _____
F. Other documented items of damages (describe below) .................................................. $ _____

G. Briefly describe plaintiff's injury, including the nature and extent of injury:

                                                      TOTAL (A-F):$ _____

### CONTRACT CLAIMS
(attach additional sheets as necessary)

Provide a detailed description of claims(s):
 PLEASE SEE ATTACHED.
                                                    TOTAL: $ _____

**Signature of Attorney/Pro Se Plaintiff: X** _____    **Date:** _____

**RELATED ACTIONS:** Please provide the case number, case name, and county of any related actions pending in the Superior Court.

## CERTIFICATION PURSUANT TO SJC RULE 1:18

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

**Signature of Attorney of Record: X** *Brian A. O'Connell*    **Date:** Dec 1, 2020

## COMMONWEALTH OF MASSACHUSETTS

**SUFFOLK, ss.**                                                  **SUPERIOR COURT**
                                                                 **C.A. NO.:**

**LIGHTHOUSE PRODUCTIONS, INC.**
**d/b/a PORT LIGHTING SYSTEMS,**
          **Plaintiff,**

**v.**

**FIRST MERCURY INSURANCE COMPANY,**
          **Defendant.**

## ATTACHMENT TO CIVIL ACTION COVER SHEET

Plaintiff is an Additional Insured on a Commercial General Liability insurance

policy issued by Defendant.  Defendant must defend and indemnify Plaintiff in the case

of John N. McSweeney as Personal Representative of the Estate of Brandon J.

McSweeney v. Bill Kenney productions, Inc., Lighthouse Productions, Inc. d/b/a Port

Lighting Systems, and Conventures, Inc., Suffolk Superior Court Civil Action No.

2084CV02124H.  Defendant refuses to defend and indemnify Plaintiff, breaching the

insurance policy/contract and harming Plaintiff. The damages to date, which continue,

are Plaintiff's defense costs in the case of John N. McSweeney as Personal

Representative of the Estate of Brandon J. McSweeney v. Bill Kenney productions, Inc.,

Lighthouse Productions, Inc. d/b/a Port Lighting Systems, and Conventures, Inc.,

Suffolk Superior Court Civil Action No. 2084CV02124H.